IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GREG PINKARD, #B85940, <br><br>   Plaintiff, <br><br>v. <br><br>LATOYA HUGHES, <br>CHAD JENNINGS, <br>PHIL MARTIN, <br>VICKI BICKER MD, <br>DR. BABOCH, <br>AMANDA HOSEY RN, <br>JOSHUA LANG, <br>NURSE BICKERS, and <br>JEREMY BONNETT, <br><br>   Defendants. | Case No. 3:25-cv-00077-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

  Plaintiff Greg Pinkard, an inmate of the Illinois Department of Corrections who is currently incarcerated at Robinson Correctional Center,[1] brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. Plaintiff claims that while housed at Robinson he was subjected to untimely and inadequate medical treatment. He seeks monetary damages.

  The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint is legally frivolous,

---

[1] Although Plaintiff refers to this correctional institution as "Robinson Correctional," (Doc. 1, pg. 19), the Court will refer to the institution by its official name, Robinson Correctional Center (Robinson).

malicious, fails to state a claim upon which relief may be granted, or requests monetary damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the pro se complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint[2]

Plaintiff alleges the following: On or around July 22 or 24, 2023, while incarcerated at Robinson, he tripped and fell on his outstretched arm, injured his wrist, and dislocated his right shoulder at the gym. (Doc. 1, p. 19). Plaintiff submitted a "sick call" request into the sick call box at the direction of an on-duty officer. Plaintiff sent a total of five "sick call" requests between the date of the injury and September 7, 2023, which is when he was first seen in the health care unit. All five requests were returned to him with the response "added to sick call." (*Id.*)

At the appointment in the health care unit on September 7, 2023, Plaintiff was seen by Nurse Amanda Hosey. (Doc. 1, p. 19). Hosey observed and noted in Plaintiff's medical charts that Plaintiff's clavicle and shoulder appeared to be out of alignment. Despite protocol requiring Hosey to order Plaintiff an x-ray, give him a sling, and send Plaintiff to the emergency room when there is a suspected dislocation or broken bone, Hosey sent Plaintiff back to his housing unit with only over-the-counter Ibuprofen and Tylenol for the pain. (*Id.*).

---

[2] Because it appears that Plaintiff is relying on statements made in the Complaint and attached exhibits in asserting his claims, the Court is construing the allegations in all of these pleadings together. *See Otis v. Demarass*, 886 F.3d 639, 644 (7th Cir. 2018).

On September 10, 2023, Plaintiff sent another sick call slip informing staff that the two medications given to him by Hosey were ineffective at treating his shoulder injury, which was "still hurting very badly." (Doc. 1, p. 19).

About two months after his injury, on September 26, 2023, Plaintiff was brought back to the health care unit, again to Hosey, and "X-rays were finally ordered and given." (Doc. 1, p. 20). It was at this point discovered—and noted in Plaintiff's medical records—that his shoulder was dislocated. Plaintiff's shoulder had been dislocated for two months without a sling, proper medication, and otherwise proper medical attention. After discovery of Plaintiff's dislocated shoulder, he was given a sling, Tramadol (medication) to take two times a day, and a referral for an orthopedic consult "marked urgent by Doctor V. Bicker M.D." (*Id.*).

On October 12, 2023, Plaintiff was taken by state vehicle to the orthopedic and sports medicine clinic at Crawford County Hospital in Robinson, Illinois. (Doc. 1, p. 20). There, Plaintiff was given a second set of x-rays which confirmed he had "an anterior shoulder dislocation [sic]." It was then noted that because of the extended period of time that the "IDOC healthcare unit allowed" his shoulder to "remain dislocated without proper treatment and without being taken to the emergency room for a shoulder reduction procedure," that surgery would "now" be required. (*Id.*).

The orthopedic consult referred Plaintiff to be seen by an orthopedic surgeon who specialized in shoulder surgery at Carle Orthopedic and Sports Medicine Center in Urbana, Illinois. (Doc. 1, p. 20). The surgeon ordered an "MRI with contrast" and two separate CT scans (a second CT scan was ordered on September 16, 2024, because the "IDOC/Robinson/Wexford healthcare unit failed to forward results" of the first CT

scan). (*Id.*, p. 15, 20). After the second CT scan, the surgeon concluded that because Plaintiff's shoulder had gone untreated for so long, he would have to undergo "invasive full shoulder replacement." (*Id.*, p. 21). If Plaintiff had originally been taken to the emergency room when the injury occurred, all that would have been needed was a "shoulder reduction procedure." The surgeon also reported that "too much time ha[d] passed," causing deterioration of Plaintiff's shoulder "beyond repair" with the "far less intrusive orthoscopic labria [sic] repair surgery." (*Id.*, p. 15).

"Numerous grievances" submitted by Plaintiff were signed off by Warden Chad Jennings and Healthcare Unit Administrator Phil Martin, which were then appealed to the administrative review board and signed off by Acting Director of Illinois Department of Corrections Latoya Hughes. (Doc. 1, p. 21).

## Preliminary Dismissal

Though Plaintiff names Defendants Dr. Baboch, Joshua Lang, Nurse Bickers, and Jeremey Bennet in the caption of his complaint, he fails to list them elsewhere in his complaint, so the Court is unable to ascertain what claims, if any, Plaintiff has against these Defendants. Because merely invoking the name of a potential defendant is not sufficient to state a claim against that individual, Dr. Baboch, Joshua Lang, Nurse Bickers, and Jeremey Bennet are dismissed without prejudice. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption.").

## Discussion

Based on the allegations in the Complaint, the Court finds it convenient to designate the following count:

**Count 1:** Eighth Amendment claim against Amanda Hosey, Vicki Becker, and Latoya Hughes for deliberate indifference to Plaintiff's medical needs.

**Count 2:** Eighth Amendment deliberate indifference claim against Chad Jennings and Phil Martin for failing to intervene to ensure that Plaintiff would be given adequate medical treatment at Robinson.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[3]

## Count 1

Plaintiff claims that nurse Amanda Hosey failed to follow proper protocol in providing medical care after Plaintiff's shoulder injury, asserting that the treatment she provided was inadequate because Plaintiff should have been provided with an x-ray, a sling, and an emergency room visit. He further claims that the care after his shoulder injury on July 22 or 24, 2023, was untimely, and that the delay in receiving appropriate treatment ultimately resulted in his need for invasive shoulder surgery. These allegations are sufficient to state an Eighth Amendment Claim for deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).

Count 1 is dismissed as to Vicki Bicker. The only mention of Bicker in the Complaint is that she referred Plaintiff to an orthopedic consult. (Doc. 1, p. 20).

---

[3] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (7th Cir. 2007).

Without more, the Court cannot reasonably infer deliberate indifference on her part. Thus, Count 1 is dismissed as to Vicker Bicker.

Count 1 is dismissed as to Latoya Hughes. Hughes is said to have "signed off" on Plaintiff's grievances at the appeals stage. (Doc. 1, p. 21). Ordinarily, an administrative official who only reviews an inmate's grievances over the alleged misconduct of another person is not "personally responsible" for the complained-of conduct and does not incur liability in a civil rights case for denying the grievance. *See Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). Plaintiff's only connection to Hughes is that she signed off on the grievance appeal decisions, thereby affirming the underlying responses to his medical complaints. (Doc. 1, p. 21). Plaintiff does not allege Hughes participated in or caused the underlying conduct. Further, as Acting Director of the Illinois Department of Corrections, Hughes is too far removed from the conduct. Thus, Count 1 is dismissed at to Latoya Hughes.

## Count 2

Plaintiff claims he completed "numerous grievances" which were all "signed off" by Chad Jennings and Phil Martin. (Doc. 1, p. 21). The grievances detail both the delay and lack of medical attention Plaintiff received, or rather, did not receive. (*Id.*, p. 8, 10, 12, 14, and 15). Plaintiff experienced a significant delay in receiving medical treatment, and when he was eventually seen by the health care unit, the care provided was inadequate. (*Id.*, p. 19). So too, Plaintiff's medications were not administered on a regular basis. (*Id.*, p. 14). Typically, mishandling grievances, without having caused or participated in the underlying conduct, is insufficient to state a claim. *Owens* at 953. And "a non-medical prison official 'will generally be

justified in believing that the prisoner is in capable hands,' if the prisoner is under the care of medical professionals." *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)). However, personal responsibility may be established by a non-medical prison official if the official "know[s] about the conduct and facilitate[s] it, approve[s] it, condone[s] it, or turn[s] a blind eye." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)). Further, a deliberate indifference claim may be brought against a non-medical prison official who fails to intervene when they have knowledge that a prisoner is receiving inadequate medical care for a serious medical condition, as outlined in a prisoner's "coherent and highly detailed grievances and other correspondences." *Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015). Chad Jennings and Phil Martin were both aware of Plaintiff's repeated grievances regarding inadequate and delayed medical care, as well as multiple call slips requesting treatment. Despite this knowledge, they deferred to the very medical staff Plaintiff alleged were either failing to treat him or providing inadequate care. From these facts, it is reasonable to infer that Jennings and Martin acted with deliberate indifference by failing to intervene to ensure Plaintiff received adequate medical attention. Accordingly, Plaintiff has stated a plausible Eighth Amendment claim for deliberate indifference based on their failure to act.

## Disposition

For the reasons stated above, **Count 1**, shall proceed against **Amanda Hosey**, but is **DISMISSED** without prejudice against **Vicki Bicker** and **Latoya Hughes**; **Count 2** shall proceed against **Chad Jennings** and **Phil Martin**.

Because there are no surviving claims against Latoya Hughes, Vicki Bicker MD, Dr. Baboch, Joshua Lang, Nurse Bickers, and Jeremy Bonnett, the Clerk of Court is **DIRECTED** to **TERMINATE** Latoya Hughes, Vicki Bicker MD, Dr. Baboch, Joshua Lang, Nurse Bickers, and Jeremy Bonnett as Defendants.

Because Plaintiff's claims involve his medical care, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court shall prepare for **Amanda Hosey**, **Chad Jennings**, and **Phil Martin**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is directed to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If any Defendant fails to sign and return the Waiver of Service of Summons (Form 6) within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if unknown, the last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or otherwise disclosed.

Each Defendant is **ORDERED** to file an appropriate responsive pleading to the Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, each Defendant only needs to respond to the issues stated in this Merit Review Order.**

If judgment is rendered against Plaintiff and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, even though his application to proceed in *forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  July 17, 2025**

　　　　　　　　　　　　　　　　　　　　　　　s/Stephen P. McGlynn
　　　　　　　　　　　　　　　　　　　　**STEPHEN P. MCGLYNN**
　　　　　　　　　　　　　　　　　　　　**United States District Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.